UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
JESSE M.,

                         Plaintiff,        <u>DECISION AND ORDER</u>
                                            1:22-cv-06044-GRJ

     v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In January of 2019, Plaintiff Jesse M.[1] applied for Supplemental Security Income Benefits and Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the applications. Plaintiff, represented by Ny Disability, LLC, Daniel Berger, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 14).

This case was referred to the undersigned on June 14, 2023. Presently pending are the parties' Motions for Judgment on the Pleadings

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket Nos. 20, 23). For the following reasons, Plaintiff's motion is due to be granted, the Commissioner's motion is due to be denied, and this case is remanded for further proceedings.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on January 8, 2019, alleging disability beginning April 1, 2009. (T at 15, 252-74, 281-87).[2]  Plaintiff's applications were denied initially and on reconsideration.  He requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on November 20, 2019, before ALJ Angela Banks. (T at 58-79). On December 20, 2019, ALJ Banks issued a decision denying the applications for benefits. (T at 12-33).  The Appeals Council denied Plaintiff's request for review on October 15, 2020. (T at 1-6).

Plaintiff commenced an action for judicial review in the United States District Court for the Southern District of New York.   On July 13, 2021, the Honorable John G. Koeltl, United States District Judge, approved a stipulation remanding the matter for further administrative proceedings. (T

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 13.

at 1126).  The Appeal Council ordered the remand on November 2, 2021.
(T at 1128-32).

The ALJ held a second administrative hearing on February 23, 2022.
(T at 1064-1083).  Plaintiff appeared with an attorney and testified. (T at
1069-1075). The ALJ also received testimony from Patricia Highcove, a
vocational expert. (T at 1078-82).

B.   *ALJ's Decision*

On May 11, 2022, the ALJ issued a second decision denying the
applications for benefits. (T at 1035-1063).  The ALJ found that Plaintiff had
not engaged in substantial gainful activity since April 1, 2009 (the alleged
onset date) and met the insured status requirements of the Social Security
Act through September 30, 2012 (the date last insured). (T at 1040-41).

The ALJ concluded that Plaintiff's degenerative disc disease in the
lumbar and cervical spines, PTSD, depressive and anxiety disorders, and
ADHD were severe impairments as defined under the Act. (T at 1041).

However, the ALJ found that Plaintiff did not have an impairment or
combination of impairments that met or medically equaled one of the listed
impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 1043).

At step four of the sequential analysis, the ALJ determined that
Plaintiff retained the residual functional capacity ("RFC") to perform light

work, as defined in 20 CFR 404.1567 (b), with the following limitations: he can occasionally balance on uneven terrain, but can maintain balance on even terrain; he can occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs; but can never climb ladders, ropes or scaffolds; he can perform simple and repetitive tasks; work in a low stress job (defined as involving no more than occasional decision-making, occasional judgment, and occasional changes in the work setting); he can do work that is goal oriented, but cannot be expected to perform production rate pace work.

The ALJ further found that Plaintiff can tolerate occasional contact with co-workers, supervisors, and the public; cannot operate a motor vehicle as an occupational requirement, nor work at unprotected heights or around moving mechanical parts; and would need to use a hand-held device for ambulating. (T at 1044).

The ALJ concluded that Plaintiff could not perform his past relevant work as a truck driver. (T at 1053).  However, considering Plaintiff's age (28 on the alleged onset date), education (at least high school), work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 1053-54).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between April 1, 2009 (the alleged onset date) and May 11, 2022 (the date of the ALJ's decision). (T at 20).  The ALJ's second decision is considered the Commissioner's final decision.

### C.    Procedural History

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on July 15, 2022. (Docket No. 1).  On April 14, 2023, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 20, 21).  The Commissioner interposed a cross-motion for judgment on the pleadings, supported by a memorandum of law, on June 14, 2023. (Docket Nos. 23, 24).  On June 27, 2023, Plaintiff submitted a reply memorandum of law in further support of his motion. (Docket No. 27).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).  The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.     *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.*

*Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant

numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises three main arguments in support of his request for

reversal of the ALJ's decision.  First, he argues that the ALJ failed to

adequately develop the record.  Second, Plaintiff contends that the ALJ

erred in assessing the extent to which he needs to use a cane.  Third,

Plaintiff asserts that the ALJ's assessment of the medical opinion evidence

was flawed, which undermines the RFC determination.  This Court will

address each argument in turn.

### A.    Duty to Develop the Record

Social Security proceedings are non-adversarial and the ALJ is obliged "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) (citation omitted).

This obligation applies even if the claimant is represented by counsel. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)(citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

The ALJ's duty to develop the record has been described as a "bedrock principle of Social Security law." *Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y.2004)(citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir.1999)).

In the present case, Plaintiff argues that the ALJ erred by failing to undertake sufficient efforts to obtain additional records from several providers.

### 1.    NP Adepoju

In January of 2019, Grace Adepoju, NP completed a Psychiatric Diagnostic Evaluation.  She had just begun treating Plaintiff and noted diagnoses of depression and anxiety disorder. (T at 1017-18).

In May of 2019, NP Adepoju completed a medical source statement in which she disclosed that she had treated Plaintiff monthly for depression, PTSD, and anxiety. (T at 1021).  She opined that Plaintiff would be absent from work about twice a month due to his impairments or treatment and had marked loss in his ability to maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, and complete a normal workday or workweek without interruption from psychologically based symptoms. (T at 1022-223).

NP Adepoju further assessed marked loss in Plaintiff's capacity to accept instructions and respond appropriately to criticism from supervisors, get along with coworkers and peers, maintain socially appropriate behavior, and set realistic goals or make plans independently of others. (T at 1023).

In her first decision, ALJ Banks considered NP Adepoju's opinion not consistent with the medical evidence or longitudinal treatment and deemed it "not persuasive." (T at 25).

In its remand order, the Appeals Council found the ALJ's analysis inadequate.  First, the Appeals Council noted that the ALJ "did not cite any specific medical evidence or findings inconsistent with the functional limitations assessed by Ms. Adepoju." (T at 1131-32).  Second, the Appeals Council observed that the administrative record "may be incomplete"

because it did not include any mental health treatment notes from NP
Adejopu. (T at 1132).  As such, the Appeals Council directed the ALJ to
reconsider Plaintiff's RFC and engage in "further development of the
administrative record …." (T at 1132).

In her second decision, the ALJ recognized that she was obliged to
seek NP Adepoju's missing records per the Appeals Council's remand
order. (T at 1052).  The ALJ underscored that Plaintiff's counsel had been
given additional time to obtain the records, but no records had been
submitted. (T at 1052).

The ALJ reconsidered NP Adepoju's opinion and still found it
unsupported and not persuasive. (T at 1052).  The ALJ specifically noted
that NP Adepoju's assessment of marked limitation in Plaintiff's
concentration was contradicted by the treatment notes provided by
Plaintiff's treating neurologist. (T at 1052).

Plaintiff argues that the ALJ erred by failing to take independent steps
to develop the record and obtain treatment notes and/or testimony from NP
Adepoju. The Court disagrees.

An ALJ may satisfy the duty to develop the record by relying on
representations from claimant's counsel that the underlying records are
unavailable and that the record is complete.  In *Jordan v. Comm'r*, 142 F.

App'x 542, 543 (2d Cir. 2005), the panel affirmed the denial of benefits even though the ALJ did not contact or obtain records from the treating physician.  There, the ALJ held the record open to allow claimant's counsel to obtain the records, the ALJ contacted counsel to follow-up on the status of his efforts, and counsel responded that the claimant had "nothing further to add to the record." *Id.*

Likewise, in *Frye v. Astrue*, 485 Fed. App'x 484, 488 n.2 (2d Cir. 2012), the panel found the record "fully developed" where the ALJ held the record open "so that counsel could submit additional evidence, contacted counsel when no further evidence was received, and, at counsel's request, granted an extension of time to obtain evidence." *Id.*

Here, the ALJ satisfied her duty. She held the record open, reminded Plaintiff's seasoned counsel of the missing records, and then relied on the representations of counsel regarding their efforts to obtain the records and their inability to locate the records and, indeed, inability to locate NP Adepoju herself.

On December 7, 2021, the ALJ sent a letter to Plaintiff and his counsel advising that a hearing was scheduled for February 23, 2022. (T at 1170).  The ALJ stated that Plaintiff had the right to submit additional

evidence and to request a subpoena directing the production of documents and/or testimony of witnesses. (T at 1171, 1173).

Further, on December 12, 2021, the ALJ sent a letter to Plaintiff's counsel advising that the proposed hearing exhibits were ready for his review and requesting that counsel indicate whether "all relevant evidence is up-to-date …." (T at 1255-56).

On February 16, 2022, Plaintiff's counsel sent a letter to the ALJ reporting that he had ordered records from "All Med" and "Chase Dental Sleepcare" and requesting additional time to submit records. (T at 1267).

The second administrative hearing was held on February 23, 2022. The ALJ asked Plaintiff's counsel whether he had any objection to the evidence of record; counsel stated that he had no objection. (T at 1067-68).

Notably, at a later point in the hearing, the ALJ asked counsel specifically about the missing records from NP Adepoju. (T at 1076). Counsel explained that they "were waiting for records." (T at 1076).  The ALJ then granted counsel a 14-day extension of time to submit records from NP Adepoju and advised counel that a further extension was available upon request. (T at 1076-77).

On March 17, 2022, Plaintiff's counsel sent a letter to the ALJ advising that NP Adepoju had apparently changed jobs without leaving a

forwarding address. (T at 1268).  As such, counsel advised the ALJ that he

had "been unable to obtain any additional records (if they exist) from" NP

Adepoju. (T at 1268).  Counsel did not ask for additional time and/or any

assistance from the ALJ. (T at 1268).  Rather, counsel suggested that it

was a "very convincing record" and requested "a fully favorable decision."

(T at 1268).

Based on the foregoing, this Court has no trouble concluding that the

ALJ satisfied her duty to develop the record with respect to NP Adepoju.

*See Torres v. Colvin*, No. 12 CIV. 6527 ALC SN, 2014 WL 4467805, at \*6

(S.D.N.Y. Sept. 8, 2014)("Because the record was held open and Plaintiff

failed to provide supplemental evidence, the ALJ fulfilled his duty to

develop the record."); *Perry v. Saul*, No. 19-CV-525F, 2020 WL 5544347,

at \*5 (W.D.N.Y. Sept. 16, 2020)("An ALJ … does not err in failing to

develop the record where the claimant's counsel advises she is seeking the

missing records, the ALJ keeps the administrative record open to allow for

supplementation, but counsel never submits the additional records, and the

claimant never requests the ALJ's assistance in obtaining the records.");

*Regino v. Comm'r of Soc. Sec.*, No. 20CV8518RABCM, 2022 WL 4369919,

at \*14 (S.D.N.Y. Aug. 31, 2022), *report and recommendation adopted sub

nom. Regino v. Comm'r of Soc. Sec. Admin.*, No. 20-CV-8518 (RA), 2022

WL 4368187 (S.D.N.Y. Sept. 21, 2022)("It was not error, under these circumstances, for the ALJ to take the representative at her word.").

### 2. Dr. Abellard

In August of 2021, Dr. Yvelyne Abellard completed a medical source statement in which she diagnosed major depressive disorder (recurrent, severe) and PTSD. (T at 1281).  She opined that Plaintiff was likely to be absent from work more than 3 times per month due to his impairments or treatment. (T at 1282).

Dr. Abellard assessed marked or extreme loss with respect to Plaintiff's ability to meet the mental demands of basic work activity, including his ability to maintain attendance, sustain a routine, perform at a consistent pace, accept instructions, respond to criticism, and respond appropriately to changes in a routine work setting. (T at 1283).  Dr. Abellard opined that Plaintiff had marked restriction in activities of daily living; marked difficulties in maintaining social functioning; constant deficiencies of concentration, persistence, or pace, and continual episodes of deterioration in work or work-like settings. (T at 1284).

The ALJ recognized that prescription records showed that in 2020 and 2021, Dr. Abellard had prescribed psychotropic medications, but noted that the record did not contain any treatment records from Dr. Abellard. (T

at 1053).  The ALJ found Dr. Abellard's opinion unpersuasive because it was not supported by any treatment records and inconsistent with the findings of Dr. Schaich, the consultative examiner. (T at 1053).

Plaintiff argues that the ALJ was obliged to undertake additional efforts to obtain Dr. Abellard's treatment notes.  This presents a somewhat closer question.  Unlike the missing records from NP Adepoju, the ALJ did not specifically discuss the records gap related to Dr. Abellard with Plaintiff's counsel.  As discussed above, however, Plaintiff's counsel advised the ALJ of their efforts to obtain additional records and counsel asked the ALJ to issue a decision in March of 2022 without requesting a further extension and/or assistance from the ALJ, despite being given multiple opportunities to do so.  Accordingly, the Court concludes that the ALJ's failure to undertake additional efforts to obtain records from Dr. Abellard does not, without more, justify remand.

### 3.   *Pain Management Specialists*

The ALJ noted that Plaintiff began treating with Dr. Petrychenko, a pain management specialist, in 2016, but then found a gap in treatment until October of 2018, when Plaintiff treated with Dr. Elzholz. (T at 1047). Plaintiff treated with Dr. Petrychenko again in December of 2018. (T at 1047).

Plaintiff argues that the ALJ was obliged to follow-up with Dr. Petrychenko to determine what, if any, treatment Plaintiff received during the gap in records.  Plaintiff also suggests the ALJ should have called a medical expert to obtain additional information regarding medication side effects.

The ALJ's "obligation to assemble the claimant's medical records, although robust, 'is not unlimited.'" *Clarke v. Comm'r of Soc. Sec.*, No. 19-CV-7213 (BCM), 2021 WL 2481909, at *13 (S.D.N.Y. June 16, 2021)(quoting *Myers ex rel. C.N. v. Astru*e, 993 F. Supp. 2d 156, 163 (N.D.N.Y. 2012)).

Here, the record contains numerous treatment notes from Dr. Petrychenko (T at 774-811, 826-955) and extensive evidence regarding Plaintiff's physical impairments (including reports and records from treating providers and a consultative examination).  Again, as pointed out above, Plaintiff's counsel asked the ALJ to render a decision in March of 2022, without alerting the ALJ to any need to further develop the record and without asking for additional time or assistance to obtain additional evidence. (T at 1268).

Moreover, Plaintiff acknowledges that Dr. Petrychenko's clinical findings and assessment from before and after the apparent treatment gap are essentially the same.

The Court, therefore, finds no reversible error regarding the ALJ's failure to take additional steps to address the gap in pain management treatment records. *See Dutcher v. Astrue*, 2011 WL 1097860, at *5 (N.D.N.Y. Mar. 7, 2011) ("Plaintiff cannot simply identify arguable gaps in the administrative record and claim that these gaps are a *per se* basis for remand.").

### B.    Use of a Cane

Plaintiff also challenges the ALJ's findings regarding his need to use a cane.   The ALJ stated that she "incorporated the use of a cane" into the RFC (T at 1050) and included a requirement that Plaintiff be permitted to use a cane to ambulate.  (T at 1044).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Remand is required where the ALJ failed to provide an "adequate 'roadmap' for his reasoning." *Almodovar v.*

*Berryhill*, No. 17-CV-8902 (BCM), 2019 U.S. Dist. LEXIS 48612, at *18 (S.D.N.Y. Mar. 22, 2019).

Here, the ALJ did not explain how she reached the conclusion that Plaintiff only needed a cane to ambulate (and, thus, by negative implication, found that he did *not* need a cane for standing). (T at 1050).

The record contains extensive evidence of Plaintiff's need to use a cane for walking *and* standing.  This includes Plaintiff's own testimony (T at 73, 1070-71) and statements from treating physicians. (T at 719, 783, 893, 1033, 1290).

The scope of Plaintiff's need to use a cane is material to the disability determination.  The vocational expert testified that a hypothetical claimant who needed a cane to ambulate could perform representative occupations that exist in significant numbers in the national economy. (T at 1080). Notably, however, the expert explained that a claimant who needed a cane for standing as well as ambulation would not be able to perform those jobs. (T at 1081).

The Commissioner points to evidence in the record that arguably supports the ALJ's decision, including clinical findings of normal gait and station, and a consultative examiner's opinion that a cane was not medically necessary. (T at 440, 718, 822, 851-52).

Although a court may sometimes overlook the lack of a robust explanation if it is possible to "glean the rationale of the ALJ's decision," *Cichocki v. Astrue*, 534 Fed. Appx. 71, 76 (2d Cir. 2013), this should be done sparingly and only where the "the record contains robust support for the finding that [the claimant] is not disabled" and it is clear the ALJ considered all the relevant evidence. *Barrere v. Saul*, 857 F. Appx. 22, 24 (2d Cir. 2021). That is not the case here. As discussed above, there is extensive evidence of Plaintiff's need to use a cane at all times, the ALJ clearly credited this evidence, at least in part, and did not accept the consultative examiner's belief that a cane was not medically necessary. It was therefore incumbent upon the ALJ to explain how she reached the conclusion that a cane was needed for ambulation, but not for standing. The absence of such an explanation requires a remand.[3]

### C.   Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013

---

[3] Plaintiff also argues that the ALJ should have given greater consideration to the impact of his obesity. Although this Court would not grant a remand on this ground alone, as Plaintiff has not identified limitations arising from obesity beyond those otherwise and more generally raised and discussed above, the ALJ should revisit the impact of Plaintiff's obesity as part of the broader reconsideration on remand.

WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§
404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated
new regulations regarding the consideration of medical opinion evidence.
The revised regulations apply to claims filed on or after March 27, 2017.
*See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that
date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical
opinions," but rather considers all medical opinions and "evaluate[s] their
persuasiveness" based on supportability, consistency, relationship with the
claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a),
(b)(2).   The ALJ is required to "articulate how [he or she] considered the
medical opinions" and state "how persuasive" he or she finds each opinion,
with a specific explanation provided as to the consistency and
supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent
with evidence from other medical sources and non-medical sources." *Dany
Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. §
416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence

from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In the present case, Plaintiff challenges the ALJ's assessment of medical opinion evidence concerning his physical and mental limitations.

### 1. *Physical Limitations*

Dr. Sabita Sarkar examined Plaintiff and reviewed medical records in June of 2018. (T at 505). Dr. Sarkar noted that Plaintiff's physical examination was positive for low back pain, tenderness on palpation, with restricted range of motion in the lower back during bending forward and backward. (T at 511). Dr. Sarker limited Plaintiff to lifting no more than 2 pounds, no standing, sitting, or walking for more than 1 hour, and no

repetitive bending or squatting. (T at 512). Dr. Sarkar completed a second report with similar findings later that same month. (T at 600-606).

Dr. Daniel Schwartz completed a consultative examiner in February of 2019. (T at 819-24).  He opined that Plaintiff should avoid unprotected heights, operating heavy machinery, and driving. (T at 824).  Dr. Schwartz assessed mild limitation in Plaintiff's ability to sit, stand, climb, push, pull, or carry heavy objects. (T at 824).

In August of 2019, Dr. Charles Pastor completed a medical source statement. (T at 1029-34).  Dr. Pastor had been treating Plaintiff monthly since June of 2018.  (T at 1029).  He opined that Plaintiff could sit, stand, walk for 3 hours in an 8-hour workday and occasionally lift up to 5 pounds. (T at 1031-32).  Dr. Pastor reported that Plaintiff would need a cane to walk and stand and would likely miss work more than 3 times per month due to his impairments or treatment. (T at 1033-34).

In October of 2021, Dr. Suelane Do Ouro completed a medical source statement. (T at 1285-90).  Dr. Do Oura reported that Plaintiff had been treating monthly. (T at 1285).  Dr. Do Oura opined that Plaintiff was limited to sitting for 4 hours and standing/walking for 4 hours in an 8-hour workday. (T at 1287). Dr. Do Oura believed Plaintiff would likely miss work

more than 3 times per month due to his impairments or treatment. (T at 1288).

Dr. S. Padmaraju and Dr. R. Abueg, non-examining State Agency review physicians, opined that Plaintiff could perform work at a light level of exertion. (T at 89, 114-18).

The ALJ found the report of Dr. Schwartz (the consultative examiner) and the opinions of the State Agency review physicians persuasive, but determined that the opinions of Dr. Sarkar, Dr. Pastor, and Dr. Do Oura were unpersuasive. (T at 1049-50).

In sum, the ALJ found that the treating physicians' assessments were unsupported by contemporaneous treatment notes, inconsistent with the conservative treatment Plaintiff received, and contradicted by the opinion of Dr. Schwartz and the clinical notes of Dr. Igor Khelemsky, a treating neurologist. (T at 1049-50).

The Court finds the ALJ's analysis inadequate.  Although the gaps in Plaintiff's medical records are problematic, they are less significant than the consistency between multiple treating providers over an extended period.

The ALJ appears to have considered each treating opinion in isolation, without accounting for the significant sense in which the opinions supported each other. *See Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-

113, 2020 WL 3969879, at *7 (D. Vt. July 14, 2020)("Moreover, the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other."); *Malia Ann B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2838054, at *7 (N.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023)(collecting cases holding that "the ALJ is obligated to discuss the consistency of a medical opinion with the other evidence in the record, which necessarily includes other medical opinions").

In other words, although it was proper for the ALJ to consider the lack of supporting treatment notes as a ground for discounting the treating providers' opinions, it was improper for the ALJ to fail to consider the significance of the opinions' consistency with each other.

Moreover, the ALJ's conclusion that the clinical findings and course of treatment were inconsistent with the restrictions assessed by the treating providers is inadequately supported.  The record extensively documents findings of limited range of motion (T at 788-91, 791-98, 835, 844, 891), repeated injections with limited relief (T at 781, 785, 790, 840, 846, 853, 892, 895), and abnormal MRIs and electrodiagnostic testing. (T at 800, 839-40, 845-45, 864-65, 866-71). *See Mackey v. Comm'r of Soc. Sec.*, 519

F. Supp. 3d 151, 153 (E.D.N.Y. 2021)("Such substitution of the ALJ's armchair views of medical evidence is clearly impermissible."); *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) ("T]he ALJ was not at liberty to substitute his own lay interpretation of that diagnostic test for the uncontradicted testimony of [the treating physician]"); *Amarante v. Comm'r of Soc. Sec.*, No. 16-CV-00717 (RJS) (BCM), 2017 U.S. Dist. LEXIS 146768, at *33 (S.D.N.Y. Sep. 8, 2017)(remanding because ALJ "improperly assume[d] the mantle of a medical expert").

Lastly, the ALJ placed undue emphasis on Dr. Khelemsky's treatment notes. Although Dr. Khelemsky, a treating neurologist, reported normal findings with respect to Plaintiff's reflexes, balance, gait, arms, and legs (T at 956-1016, 1324-1334), he never offered an opinion regarding Plaintiff's work-related physical restrictions and treated Plaintiff for ADHD, not for his back problems.

While Dr. Khelemsky's clinical findings, the State Agency review physician assessments, and Dr. Schwartz's consultative opinion provide some support for the ALJ's decision, they are not sufficient to justify the ALJ's decision to find unpersuasive the consistent conclusion of three treating providers, rendered over a sustained period, and supported by an extensive treatment record. *See, e.g., Raymond M. v. Comm'r of Soc. Sec.*,

No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *9 (N.D.N.Y. Feb. 22, 2021)("With respect to consistency, the ALJ should have addressed the fact that Dr. Ferrin's opinion was an outlier among the medical opinions of record."); *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)("The new regulations cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner.").

### 2.   *Mental Limitations*

In June of 2018, Dr. Peter Bulow performed a psychiatric assessment interview. (T at 642-48).  Dr. Bulow diagnosed major depressive disorder (recurrent, moderate), generalized anxiety disorder, and opioid dependence in remission. (T at 647-48).  He characterized Plaintiff as "[t]emporarily unable to work." (T at 648).

Dr. David Schaich performed a consultative examination in February of 2019. (T at 813-18).  Dr. Schaich found no evidence of limitation in Plaintiff's ability to understand, remember, and apply simple or complex directions and instructions; moderate impairment in his ability to use reason and judgment to make work-related decisions; moderate limitation with regard to interacting with supervisors, co-workers, and the public; moderate impairment in sustaining concentration and performing at a consistent

pace; moderate limitation regulating emotions, controlling behaviors, maintaining well-being, attending to proper attire and hygiene; and no limitation in sustaining an ordinary routine an attendance, being aware of hazards and taking appropriate precautions. (T at 817).

As discussed above, NP Adepoju completed a medical source statement in May of 2019. (T at 1021-24). NP Adepoju opined that Plaintiff would be absent from work about twice a month due to his impairments or treatment and had marked loss in his ability to maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, and complete a normal workday or workweek without interruption from psychologically based symptoms. (T at 1022-223).

NP Adepoju further assessed marked loss in Plaintiff's capacity to accept instructions and respond appropriately to criticism from supervisors, get along with coworkers and peers, maintain socially appropriate behavior, and set realistic goals or make plans independently of others. (T at 1023).

In his August 2019 report, Dr. Pastor indicated that Plaintiff's depression, anxiety, and ADHD severely limited his ability to deal with work stress. (T at 1030).

As discussed above, Dr. Abellard provided a medical source statement in August of 2021. (T at 1281-84). Dr. Abellard opined that

28

Plaintiff was likely to be absent from work more than 3 times per month due to his impairments or treatment. (T at 1282).  She also assessed marked or extreme loss with respect to Plaintiff's ability to meet the mental demands of basic work activity, including his ability to maintain attendance, sustain a routine, perform at a consistent pace, accept instructions, respond to criticism, and respond appropriately to changes in a routine work setting. (T at 1283).  Dr. Abellard opined that Plaintiff had marked restriction activities of daily living; marked difficulties in maintaining social functioning; constant deficiencies of concentration, persistence, or pace, and continual episodes of deterioration in work or work-like settings. (T at 1284).

In an October 2021 report Dr. Do Ouro opined that Plaintiff's depression and anxiety contributed to the severity of his symptoms and functional limitations and found that Plaintiff was severely limited in his ability to deal with work stress. (T at 1287).

Dr. K-Lieber-Diaz, a non-examining State Agency review physician, assessed mild limitation in Plaintiff's ability to understand, remember, or apply information; mild impairment with respect to interacting with others; moderate limitation in concentration, persistence, and pace; and mild limitation regarding adapting or managing oneself. (T at 86). Dr. O. Fassler,

another State Agency review physician, reached essentially the same conclusions. (T at 119-21).

The ALJ found certain aspects of Dr. Schaich's opinion persuasive. The ALJ accepted the consultative examiner's assessment of moderate limitation with respect to using reason and judgment, interacting with others, sustaining concentration and pace, and regulating emotions. (T at 1052).  The ALJ did not accept Dr. Schaich's conclusion that Plaintiff had no limitation in his ability to understand, remember, and apply complex directions. (T at 1052).

The ALJ deemed the opinions of NP Acepoju and Dr. Abellard unpersuasive. (T at 1052-53).  The ALJ considered the opinions of the State Agency review consultants somewhat persuasive, although the ALJ found a greater degree of limitation related to Plaintiff's mental functioning. (T at 1053).

The Court finds the ALJ's analysis insufficiently supported.

The ALJ stated that "[a]side from Dr. Klemsky [*sic*], there is no documentation of any regular or consistent mental health treatment." (T at 1051).  This is inaccurate.  NP Adepoju stated that she treated Plaintiff monthly for depression, PTSD, and anxiety. (T at 1021). Dr. Abellard advised that she was treating Plaintiff monthly. (T at 1281).  Although the

record does not include their underlying treatment notes, their statements are evidence of ongoing mental health treatment. Moreover, the ALJ recognized that prescription records evidenced that in 2020 and 2021, Dr. Abellard had prescribed psychotropic medications. (T at 1053).

In addition, the ALJ did not account for the significant consistency between the opinions.  Every provider who treated Plaintiff and provided an assessment of his work-related abilities reported limitations much more significant than the ALJ's RFC determination.  Again, while the treatment record gap is problematic (particularly as related to Plaintiff's mental health treatment), the ALJ overrates its significance and underrates the important consistency between the treating providers' opinions.

The ALJ's failure to account for this consistency and heavy reliance on Dr. Schaich's consultative examination was error. The Second Circuit has long cautioned that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)(citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)).  "This concern is even more pronounced in the context of mental illness where … a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019).

The ALJ also overrates the significance of Dr. Khelemsky's treatment notes.  Although these records do tend to support some aspects of the ALJ's decision, insofar as they suggest that Plaintiff's AHD was well-controlled with medication, Dr. Khelmesky was not asked to assess Plaintiff's ability to meet the mental demands of basic work activity and each treating provider who was asked for such an assessment indicated disabling impairments. *See Primo v. Berryhill*, 17 Civ. 6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 Fed. Appx. 119, 121 (2d Cir. 2018)(decision to discount opinion based on treatment notes indicating claimant was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

Accordingly, for these reasons, a remand for proper consideration of the medical opinion evidence is required.

### D.      Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d

377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further

administrative proceedings is the appropriate remedy "[w]here there are

gaps in the administrative record or the ALJ has applied an improper legal

standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also*

*Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS

180514, at *28 (S.D.N.Y. Nov. 6, 2014).

For the reasons discussed above, the Court concludes a remand is

necessary for reconsideration of the evidence concerning Plaintiff's need to

use a cane, along with the medical opinion evidence concerning Plaintiff's

physical and mental limitations.

This Court is mindful that Plaintiff's initial application for benefits has

been pending for more than four (4) years and this matter has already been

remanded once.  As such, this Court exercises its discretion and directs

that proceedings before the ALJ be completed within 120 days of the date

hereof.  If the decision is a denial of benefits, then a final decision shall be

rendered within 60 days of any appeal by Plaintiff.  *See Martinez v. Saul*,

No. 19-CV-6515 (BCM), 2021 WL 2588783, at *11 (S.D.N.Y. June 23,

2021).

In addition, this Court finds that this is the rare case in which

assignment to a different ALJ on remand should be directed.  *See Lebron*

*v. Colvin*, No. 13CV9140, 2015 WL 1223868, at *25 (S.D.N.Y. Mar. 16, 2015).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 20) is GRANTED; the Commissioner's Motion for Judgment on the Pleadings (Docket No. 23) is DENIED; and this case is REMANDED for further proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment in favor of the Plaintiff and then close the file.

Dated: August 7, 2023                        *s/ Gary R. Jones*

                                             GARY R. JONES
                                             United States Magistrate Judge